41 F.3d 1457
 VULCAN PAINTERS, INC. dba Vulcan Group, The,
Plaintiff-Appellee, Cross-Appellant,
v.
MCI CONSTRUCTORS, INC., Defendant-Appellant, Cross-Appellee.
VULCAN PAINTERS, INC. dba Vulcan Group, The, Plaintiff-Appellee,
v.
MCI CONSTRUCTORS, INC., Defendant-Appellant.
 Nos. 93-6988, 93-7061.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 6, 1995.
 
 William R. Lucas, Jr., Lightfoot, Franklin White & Lucas, Birmingham, AL, Thomas B. Newell, Charlie C.H. Lee, Watt, Tieder, Killian & Hoffar, McLean, VA, for appellant.
 Richard H. Monk III, E. Mabry Rogers, Susan Donovan Josey, Bradley, Arant, Rose & White, Birmingham, AL, for appellee.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.
 DYER, Senior Circuit Judge:
 
 
 1
 This appeal concerns a contract dispute between Vulcan Painters, Inc., a subcontractor, and MCI Constructors, Inc., the primary contractor for a project owned by the Washington Suburban Sanitary Commission. The issue raised by MCI on appeal concerns the introduction of parol evidence, to vary the terms of the Change Order and a Release which MCI claims were unambiguous. The cross-appeal by Vulcan raises the issue of the dismissal of its claim of fraud and economic duress by MCI, and its claim for punitive damages.
 
 
 2
 Because we find that the documents executed by the parties releasing claims by Vulcan in exchange for payment by MCI were unambiguous, we reverse the judgment entered in favor of Vulcan and remand for further proceedings. With respect to the cross-appeal, we find that Vulcan's claim of fraud and economic duress were properly dismissed, and, therefore, we affirm on that issue.
 
 PROCEDURAL BACKGROUND
 
 3
 Vulcan's complaint against MCI sought damages for breach of contract, conversion, breach of fiduciary duty, fraud, and economic duress. MCI moved for summary judgment on the grounds that Vulcan, by the express terms of Change Order No. 7 and a Final Release, executed after ninety-five percent of the work of Vulcan had been completed, waived, released and relinquished any and all claims, demands, and right of lien for work, labor and materials furnished through August 30, 1991 and for all work described in the letters of claim in Change Order No. 7. The district court denied MCI's motion for summary judgment on the grounds that there remained genuine issues of fact whether Vulcan could avoid Change Order No. 7 and the Final Release by claiming fraud and economic duress.
 
 
 4
 Before trial, MCI filed motions in limine: (1) to preclude Vulcan from introducing parol evidence relating to purported releases; (2) to preclude Vulcan from introducing evidence of damages for delay; and (3) to preclude Vulcan from introducing evidence of claims for monies owed for work performed prior to August 30, 1991. The court overruled motions (1) and (2), and reserved judgment on motion (3) until trial.
 
 
 5
 At the close of Vulcan's evidence, MCI moved for judgment as a matter of law on all issues. The district court denied MCI's motion, ruling that the issues of accord and satisfaction, fraud, and the meaning of the purported releases would be submitted to the jury. At that time, however, the court ruled that it would not charge the jury on Vulcan's claim of economic duress. After MCI rested without presenting any evidence, the court reconsidered and granted MCI's motion for judgment as to Vulcan's claims for fraud, conversion, economic duress, breach of fiduciary duty, and punitive damages. Accordingly, the jury was instructed only on Vulcan's breach of contract claim and MCI's affirmative defense of accord and satisfaction.
 
 
 6
 The jury returned a verdict in favor of Vulcan for $400,000. Attorney's fees in the amount of $165,000 were awarded to Vulcan under the contract, as the prevailing party.
 
 FACTS
 The Parties' Agreement to Settle Claims
 
 7
 Vulcan submitted seven letters of claim to MCI in June, July and August, 1991 for extra work on the project, including delays from deliveries of steel out of the scheduled sequence and inadequate surface preparation by the subcontractor Furman Builders, Inc.
 
 
 8
 At the time it made its claims for payment, Vulcan was critically low on cash for its payroll. In telephone conversations between Vulcan's President, Mr. Boyd, and MCI's President, Mr. Mitchell, the parties negotiated for payment of $50,000 and release of claims. The documents reflecting the terms were prepared by MCI and sent to Boyd who left for Atlanta immediately after the conversation with Mitchell. He did not read the documents until several weeks later.
 
 
 9
 In addition to Vulcan's claims for delay damages, Change Order No. 7 identified seven letters of claim previously sent to MCI. Change Order No. 7 was executed by Vulcan and MCI on September 11, 1991, following their telephone negotiations and agreement.
 
 Change Order No. 7 expressly states:
 
 10
 This change order represents full and final payments and obligation for any and all additional work by Vulcan Group on this contract including, but not limited to, Vulcan's letters of claim dated June 19, July 9, July 17, July 31, August 1, August 23, August 26, 1991 and work associated with Field Order No. 7.
 
 
 11
 This change order amount represents an accord and satisfaction of all claims for additional work and delays by Vulcan pertaining to this project.
 
 Original Subcontract Amount $435,648.00
 Change Order Nos. 1-6 $ 33,173.69
 This Change Order No. 7 $ 50,000.00
 
 12
 -----------
 
 Revised Subcontract Amount $518,821.69
 
 13
 MCI faxed Change Order No. 7 to Vulcan to the attention of David R. Boyd. Boyd authorized Vulcan's controller, Ms. Conway, to use his signature stamp for Change Order No. 7 in his absence from the office. The signed document was faxed back to MCI by Ms. Conway. When MCI received Change Order No. 7 with Boyd's signature, MCI forwarded a check to Vulcan in the amount of $50,000, which was received and deposited by Vulcan. These funds have not been returned. The conflicting understandings of the documents by the parties developed after the execution of the change order.
 
 
 14
 At the same time Change Order No. 7 was executed, Vulcan's President also executed a Final Release discharging MCI from further claims of Vulcan.
 
 The Final Release states as follows:
 
 15
 KNOW ALL MEN BY THESE PRESENTS, that the undersigned of Vulcan Painters, Incorporated for and in consideration of the Sixty-nine thousand thirteen dollars and 11/100, $69,013.11 and other good and valuable consideration, the receipt for which is hereby acknowledged, does hereby waive, release and relinquish any and all claims, demands and right of lien for work, labor and/or materials furnished through the 30th day of August, 1991 on the above described project.
 
 
 16
 THE UNDERSIGNED further deposes and says that all labor, materials, supplies, equipment, etc. furnished by the undersigned, have been fully paid for and discharged through the above date.
 
 
 17
 (SIGNED BY DAVID R. BOYD AND NOTARIZED)
 
 
 18
 The Final Release also bore the signature stamp of David R. Boyd, which was affixed by Ms. Conway at Boyd's direction and faxed back to MCI. The Final Release which was notarized by Ms. Conway was never read by Boyd before it was executed.
 
 
 19
 All claims for extra work, including that in the letters of claim were performed prior to August 30, 1991.
 
 
 20
 Attempts to Avoid Change Order No. 7 and Release
 
 
 21
 In an attempt to avoid Change Order No. 7 and the Final Release, Vulcan claims that they do not reflect the oral agreement Boyd reached with Mitchell prior to the dates they were executed because the documents were procured through fraud and economic duress. Having failed on these issues, Vulcan claimed that the documents were ambiguous.
 
 Evidence Considered at Trial
 
 22
 Vulcan introduced evidence in an attempt to support its claims of fraud and economic duress. It introduced parol evidence to show negotiations prior to the execution of the documents, the parties' course of dealing, conduct both before and after executing the documents, and the parties' intent in executing the documents. Over MCI's objections, the district court permitted the introduction of this parol evidence to vary the terms of the Change Order No. 7 and the Final Release.
 
 
 23
 At the close of the evidence, the district court, notwithstanding that it dismissed the claims of fraud and economic duress, found, without any explication, that the documents were ambiguous. The district court submitted to the jury the question whether there was an accord and satisfaction and what the parties intended with respect to the Release and Change Order No. 7, thus allowing consideration of parol evidence.
 
 DISCUSSION
 Interpretation of the Documents
 
 24
 The standard of review in determining whether a document is ambiguous is de novo. Carriers Container Council v. Mobile Steamship Assoc., 896 F.2d 1330, 1337 (11th Cir.1990); Sublett v. Equitable Life Assurance Society, 895 F.2d 1381, 1384 (11th Cir.1990). The issue of whether the district court erred in permitting Vulcan to present parol evidence to interpret the meaning of Change Order No. 7 and the Final Release hinges directly on whether those documents are ambiguous. If the documents are not ambiguous, parol evidence is inadmissible as a matter of law. See Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993); Amos v. Coffey, 228 Va. 88, 320 S.E.2d 335 (1984).
 
 
 25
 Based upon a review of the four corners of the documents, we find that Change Order No. 7 and the Final Release are unambiguous. Therefore, parol evidence was not admissible to change or contradict the documents executed by the parties. Vulcan's evidence with respect to MCI's backcharge under the Furman subcontract, if relevant at all, could only have been introduced in an effort to prove its fraud claim which was later dismissed. It was irrelevant to the question of claimed ambiguity in Change Order No. 7 and the Final Release since Furman's subcontract with MCI had nothing to do with MCI's subcontract with Vulcan.
 
 
 26
 Finally, Vulcan argues that it was proper for the district court to submit to the jury whether there was an accord and satisfaction because it requires a meeting of the minds, which is a question of fact for the jury. The district court's charge to the jury invited it to consider the parties' conduct after the date of Change Order No. 7 and the Final Release was executed. This was error. Vulcan's reliance on the fact that Boyd did not read the documents before they were executed give us little pause. One who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation. Waldrep v. Nosrat, 426 So.2d 822 (Ala.1983). Here the district court dismissed the fraud claim. Since Change Order No. 7 and the Final Release are unambiguous, parol evidence could not be introduced to vary or change its definitive language. It necessarily follows that there was no issue of fact to be submitted to the jury.
 
 
 27
 The confusion that led to error in this case was occasioned by the admission of testimony by Mr. Boyd in support of Vulcan's claim of fraud and economic duress. This evidence was admitted in Vulcan's case at a chronological time when it was presenting its case in chief to support its claim of fraud which had not then been dismissed. After Vulcan rested, the district court found that there was no evidence of economic duress. After MCI rested, without offering evidence, the district court granted MCI's motion for judgment on Vulcan's claim of fraud. This left only Vulcan's claim for breach of contract. Thus, there was no theory upon which Vulcan could avoid the effect of Change Order No. 7 and the Final Release. Indeed, Vulcan concedes that "if the trial court had concluded at the conclusion of Vulcan's case that the evidence was not admissible on the contract count, it could have stricken the evidence from the jury's consideration." This is precisely what the district court should have done and then taken the case from the jury. The judgment in favor of Vulcan is contrary to the terms of Change Order No. 7 and the Final Release, and, therefore, must be reversed.
 
 
 28
 Dismissal of Vulcan's Claims for Fraud and Punitive Damages
 
 
 29
 In order to prove its fraud claim, Vulcan was required to establish by substantial evidence (1) a false representation; (2) of a material existing fact; (3) relied upon by Vulcan; and (4) damage as proximate result of the misrepresentation. See Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602, 604 (Ala.1987).
 
 
 30
 The district court granted MCI's motion for judgment as a matter of law on Vulcan's claims that MCI committed deliberate and willful acts constituting fraud and engaged in malicious conduct sufficient to warrant imposition of punitive damages.
 
 
 31
 The standard of review in determining whether the district court erred in dismissing Vulcan's fraud claim at the close of the evidence, pursuant to Fed.R.Civ.P. 50(a), is whether there is substantial evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach a different conclusion. Sherrin v. Northwestern Nat'l Life Ins. Co., 2 F.3d 373, 377 (11th Cir.1993); Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial, Inc., 919 F.2d 1517, 1524 (11th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 68, 116 L.Ed.2d 43 (1991).
 
 
 32
 Boyd testified that he had agreed to give up seven claims referenced in Change Order No. 7 and delay damages because he was lulled into a sense of security that MCI shared his understanding of the change order. Vulcan argues that it presented evidence from which the jury would likely have concluded that if Boyd had known, contrary to Mitchell's representations, that MCI in fact had backcharged Furman in the amounts of Vulcan's claims and retained the monies for itself, Boyd would not have negotiated and reached the agreement with Mitchell.
 
 
 33
 To establish its fraud claim, Vulcan asserts that Boyd's reliance on Mitchell's representation was justifiable and that Mitchell made promises to Boyd with a then-existing intent not to perform in order to induce Boyd to reach a settlement. Along with Vulcan's assertion of MCI's misrepresentations regarding backcharging Furman and future contract payments, Vulcan attributes to MCI knowledge that Boyd was not present to review the documents of a final waiver of lien right, and that MCI was aware of Vulcan's financial condition, being in dire need of the money it received on September 12, 1991.
 
 
 34
 To overcome the fact that Boyd did not read the documents until weeks after they were executed, Vulcan argues that Boyd was "prevented" and "induced" not to read them. We find this argument wholly without merit.
 
 
 35
 We find that Vulcan failed to present sufficient evidence of fraud for a reasonable jury to conclude that Vulcan was defrauded under Ala.Code Secs. 6-5-101 and 6-5-102. The evidence Vulcan proffered to support its fraud claim is predicated upon the circumstances surrounding the affixing of Boyd's signature by Vulcan's controller in Vulcan's own office, which was neither induced by nor under the direction or control of MCI. MCI's negotiations with Furman, as a third party, have no bearing on the issue of fraud. Vulcan has not established sufficient facts to support its claim of fraud by MCI to induce Vulcan's acceptance of the express terms of the written documents executed by Boyd.
 
 CONCLUSION
 
 36
 We reverse the judgment in favor of Vulcan for $400,000. We direct the entry of judgment in favor of Vulcan for $23,153.76 ($20,424.85 for retainage and $2,728.91 for work performed after August 30, 1991). We affirm the dismissal of Vulcan's claims of fraud and economic duress. We reverse the judgment in favor of Vulcan granting it attorneys' fees of $165,000.00. We remand the case to the district court for the determination of reasonable attorneys' fees to be awarded MCI as the prevailing party consistent with the subcontract.
 
 
 37
 AFFIRMED in part, REVERSED in part and REMANDED.