United States Court of Appeals,

Eleventh Circuit.

No. 95-3656.

Jeetendra L. SHUKLA, Individually, Plaintiff-Appellant,

v.

BP EXPLORATION & OIL, INC., a.k.a. BP Oil Company, Petro Distributing, Inc., Defendants-Appellees.

June 20, 1997.

Appeals from the United States District Court for the Middle District of Florida. (No. 94-740-CIV-J-16), John H. Moore, II, Judge.

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

Plaintiff/Appellant Jeetendra Shukla ("Shukla") appeals (1) the district court's grant of summary judgment in favor of Defendant/Appellant BP Exploration & Oil, Inc. ("BP") on Shukla's claim for constructive termination of his franchise in violation of the Petroleum Marketing Practices Act ("PMPA" or "the Act")[1]; and (2) the district court's grant of judgment as a matter of law in favor of BP on Shukla's Florida law fraud claim. We conclude that Shukla's allegations fail to support a constructive termination claim and that the PMPA preempts his fraud claim. Accordingly, we affirm the judgment of the district court.

I. Background

This case arises from the refusal of Petro Distributing, Inc. ("Petro") to renew Shukla's gasoline service station franchise agreement. Shukla entered into a Dealer Lease and Supply Agreement ("DLSA") with BP in June, 1993, in which he agreed to lease a BP station in Jacksonville, Florida, and sell BP products. Shukla's franchise was subject to a one-year trial period, after which BP had the option to renew. Six months after Shukla signed the DLSA, BP sold all of its Jacksonville-area service stations to Petro and assigned its franchise agreements—including Shukla's DLSA—to Petro. Petro operated the Jacksonville stations as a jobber, continuing to use

[1]15 U.S.C. § 2801, *et seq.*

BP's trade name and products. At the expiration of Shukla's one-year trial period, Petro refused to renew the DLSA. Shukla filed suit against BP, alleging (1) that BP's assignment to Petro constructively terminated his franchise agreement, in violation of the PMPA; and (2) that BP fraudulently induced him to enter into the DLSA.[2] The district court granted BP's motion for summary judgment as to Shukla's PMPA claim and denied it as to Shukla's fraud claim. The court then set the fraud claim for trial. During a pretrial conference, however, the district judge granted BP's oral motion for judgment as a matter of law. The judge stated that, upon reconsideration, he was "convinced ... that [Shukla did not have] a case for fraud in the inducement." R8-1, Transcript of Pretrial Proceedings, at 19. Shukla then perfected this appeal.

II. Issues Presented

Shukla presents two issues on appeal: (1) whether BP's assignment to Petro constituted a constructive termination of Shukla's franchise agreement, thereby triggering the protections of the PMPA; and (2) whether Shukla's fraudulent inducement claim should have proceeded to trial.

III. Standard of Review

We review a district court's grant of summary judgment or judgment as a matter of law *de novo,* applying the same legal standard used by the district court. *Morisky v. Broward County,* 80 F.3d 445 (11th Cir.1996) (summary judgment); *United States Anchor Mfg., Inc. v. Rule Indus., Inc.,* 7 F.3d 986, 993 (11th Cir.1993) (judgment as a matter of law). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995). Judgment as a matter of law is appropriate when, under the governing law and the evidence presented, there can be but one reasonable conclusion as to the verdict. *Vulcan Painters, Inc. v. MCI Constructors, Inc.,* 41 F.3d 1457, 1461 (11th Cir.1995).

IV. Discussion

A. *PMPA Claim*

---

[2]Shukla also sued Petro for tortious interference and conversion. Those claims were resolved in the district court and are not at issue in this appeal.

Congress enacted the PMPA in 1978 to protect motor fuel franchisees from arbitrary or discriminatory termination or nonrenewal of their franchise agreements. *Jones v. Crew Distributing Co.,* 984 F.2d 405, 407-08 (11th Cir.1993); *Farm Stores, Inc. v. Texaco, Inc.,* 763 F.2d 1335, 1339 (11th Cir.1985). The PMPA "sets forth the circumstances under which a supplier may terminate or decide not to renew a franchise and imposes certain notice requirements." *Freeman v. BP Oil, Inc., Gulf Products Division,* 855 F.2d 801, 802 (11th Cir.1988). In general, franchises may only be nonrenewed for one of several enumerated statutory reasons. *See* 15 U.S.C. § 2802(b). However, trial franchises[3] like Shukla's may be nonrenewed without cause, so long as the supplier satisfies the notice requirements set forth in § 2804 of the PMPA. *See* 15 U.S.C. § 2803(a)(1), (c)(1). Section 2804 provides that, in the absence of extenuating circumstances, the franchisor must provide the franchisee with written notice of its intention not to renew at least 90 days prior to the effective date of termination of the franchise. *See* 15 U.S.C. § 2804.

Shukla contends that BP's assignment of his franchise agreement to Petro constructively terminated the agreement in December of 1993 and that BP failed to give notice of the termination under § 2804. Shukla acknowledges that Petro sent him a termination letter in February of 1994 which conformed to § 2804. However, he maintains that this termination notice was ineffective. He argues that because the assignment was invalid, Petro never became the franchisor and Petro could not have delivered the requisite notice. BP argues that the assignment to Petro was valid and did not constitute a constructive termination. We agree with BP.

The PMPA does not prohibit the assignment of franchises if assignment is "authorized by the provisions of such franchise or by any applicable provision of state law which permits such transfer or assignment without regard to any provision of the franchise." 15 U.S.C. § 2806(b). Although we have not yet addressed the validity of an assignment under the PMPA, several of our sister circuits have done so. These courts have concluded that assignment does not *automatically* constitute constructive termination of a franchise agreement, thereby implicating the PMPA;

---

[3]A "trial franchise" is a franchise for a term of one year or less which specifies in writing that it is a trial franchise and that the franchisor may elect not to renew it without cause by giving the franchisee proper statutory notice. *See* 15 U.S.C. § 2803(b).

however, assignment *may* result in constructive termination, depending on the circumstances. *See Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.,* 940 F.2d 744, 750-51 (1st Cir.1991); *Cedar Brook Service Station, Inc. v. Chevron U.S.A., Inc.,* 930 F.2d 908 (2d Cir.1991), *aff'g without op.* 746 F.Supp. 278 (E.D.N.Y.1990), *cert. denied,* 502 U.S. 819, 112 S.Ct. 77, 116 L.Ed.2d 50 (1991); *Ackley v. Gulf Oil Corp.,* 889 F.2d 1280, 1281 (2d Cir.1989) (affirming district court opinion, 726 F.Supp. 353 (D.Conn.1989), "substantially for the reasons given in that opinion"); *May-Som Gulf, Inc. v. Chevron U.S.A., Inc.,* 869 F.2d 917, 922-25 (6th Cir.1989); *Barnes v. Gulf Oil Corp.,* 795 F.2d 358 (4th Cir.1986) ("*Barnes I* "), *on appeal after remand,* 824 F.2d 300 (4th Cir.1987) ("*Barnes II*"). *Cf. April Marketing & Distributing Corp. v. Diamond Shamrock Refining and Marketing Co.,* 103 F.3d 28 (5th Cir.1997) (declining to decide, in case not involving assignment, whether PMPA permits claims for constructive termination); *Little Oil Co., Inc. v. Atlantic Richfield Co.,* 852 F.2d 441, 444-45 (9th Cir.1988) (same).

The Sixth Circuit's well-reasoned opinion in *May-Som Gulf* is instructive. In that case, twelve Ohio service station franchisees alleged that defendant Chevron, U.S.A., Inc.'s ("Chevron") sale of its Ohio assets to Cumberland Farms, Inc. ("Cumberland") constructively terminated their franchises in violation of the PMPA. The court first noted that the PMPA defines a franchise in terms of three elements: "a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the premises at which motor fuel is sold." *May-Som Gulf,* 869 F.2d at 917 (*quoting Barnes I,* 795 F.2d at 360); *see* 15 U.S.C. § 2801(1). The court reasoned that a constructive termination could occur if an assignment resulted in a breach of one of the three statutory components of the franchise agreement. *May-Som Gulf,* 869 F.2d at 922. Noting that state law governs the validity of a franchise assignment, the court reasoned that a constructive termination could also occur if the assignment violated state law. *Id.* at 923. Thus, the court held that

> to sustain a claim, under the PMPA, that a franchisor assigned and thereby constructively terminated a franchise agreement, the franchisee must prove either: (1) that by making the assignment, the franchisor breached one of the three statutory components of the franchise agreement ...; or (2) that the franchisor made the assignment in violation of state law and thus, the PMPA was invoked.

*Id.* at 922; *see also Chestnut Hill Gulf,* 940 F.2d at 750-51 (*quoting May-Som Gulf* ).

Shukla charges that after the assignment, Petro engaged in direct price competition with Shukla by selling gasoline at a nearby Petro company station at retail prices lower than Shukla could afford to charge. Shukla alleges that his business dropped off as a result of Petro's underselling. Moreover, Petro discontinued BP's supply pricing structure, which had protected BP's franchised dealers from being undersold by BP company stations or other major brand gasoline retailers in the same market area. Finally, according to Shukla, Petro implemented a less favorable system of crediting Shukla for credit card sales. Shukla contends that the assignment increased his burdens under the franchise agreement and was therefore invalid under Florida law.[4] Alternatively, he argues that Petro's pricing practices constituted a breach of the supply component of his franchise agreement, resulting in a termination of the franchise. We are persuaded that BP's assignment to Petro did not constructively terminate Shukla's franchise under either theory.

*First,* the assignment did not increase Shukla's contractual burdens. For the purpose of the PMPA, Shukla's price competition allegation boils down to a complaint that Petro charged Shukla too much for gasoline, so that Shukla was unable to compete effectively with Petro's company station.[5] However, the prices Petro charged Shukla for gasoline could not have increased Shukla's contractual burdens because the DLSA did not fix a price for gasoline. Rather, the DLSA provided that prices for all BP products purchased by Shukla "shall be BP's price in effect at the time and place of delivery for franchise dealers. Prices for all products shall be subject to change without notice to Dealer." R1-22, Exh. A, ¶ 14. BP was free to raise the price of gasoline; its assignee, Petro, was therefore free to do the same. Construing a similar open price term, the Sixth Circuit held that "the plaintiff's price increase allegations could not constitute a contractual burden." *May-Som Gulf,* 869 F.2d at 924. *See also Ackley,* 726 F.Supp. at 363-64 (franchisee could not claim increased

---

[4]Florida law provides that contractual rights may be assigned "except where the assignment would materially change the duty of the other party, or increase the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance." Fla.Stat.Ann. § 672.210 (1993).

[5]We note that Shukla does not allege that Petro charged Shukla more for gasoline than Petro charged other independent dealers or its company stores.

burden based on gasoline price increase where franchise agreement contained open price term); *Cedar Brook Service Station,* 746 F.Supp. at 283 (same); *Clark v. BP Oil Co.,* 930 F.Supp. 1196, 1207-08 (E.D.Tenn.1996) (same, construing identical contractual language); *cf. Barnes II,* 824 F.2d at 302 ("In *Barnes I* ... we ruled that the assignment of a franchise that increases a retailer's gasoline cost over *the stipulated franchise price* furnishes a cause of action against the refiner under the PMPA.") (emphasis added).

Nor did Petro's suspension of BP's price supports or credit card payment system increase Shukla's contractual burdens because those features were not part of the franchise agreement. Courts have consistently rejected the argument that the discontinuation of extra-contractual, informal arrangements transforms a franchise assignment into a termination under the PMPA. *See May-Som Gulf,* 869 F.2d at 924-25; *Barnes I,* 795 F.2d at 364; *Clark,* 930 F.Supp. at 1207-08; *Cedar Brook Service Station,* 746 F.Supp. at 278 ("Changes made by Cumberland that were within Chevron's prerogative to make are likewise insufficient to show a burden or impairment flowing from the assignment at issue."). Indeed, the district court in *Ackley* rejected a claim nearly identical to the one Shukla makes here. *Ackley,* 726 F.Supp. at 364 ("[T]he fact that Cumberland's company-operated locations purchased gasoline at lower prices [than plaintiffs] does not support a finding of ... "increased burden or risk' ..."). Under his contract with BP, Shukla always faced the possibility that BP would raise its prices without notice, alter its price support system, or modify its credit card arrangements. In sum, we conclude that Shukla has failed to show that BP's assignment to Petro increased his contractual burdens.

*Second,* Shukla's allegations about Petro's pricing practices, if true, do not support a claim that the assignment breached the supply element of Shukla's franchise agreement. Insofar as Shukla has not alleged that Petro refused to supply him with gasoline, we question whether Petro's alleged conduct even implicates the supply component of the agreement. *See May-Som Gulf,* 869 F.2d at 923 (no breach of supply component where assignee had secured supply of fuel for dealer, albeit at increased price). Assuming the supply component is implicated, there has been no breach. The DLSA specifically provides that the franchisor may change prices without notice to Shukla. The

price support system and credit card policies are not even mentioned in the DLSA. Thus, Petro's abandonment of those arrangements could not constitute a breach of the franchise agreement.

Shukla argues that the DLSA must be construed by reference to Florida's law of sales, which requires that a seller fix prices in good faith when the contract leaves the price term open. *See* Fla.Stat.Ann. § 672.305 (1993). Further, Florida sales law allows open price terms to be explained or supplemented by reference to the parties' course of dealing or usage of trade. Fla.Stat.Ann. § 672.202. Shukla contends that, under these principles, the DLSA must be read to include BP's price support and credit card arrangements, and that Petro's failure to continue BP's practices breached the DLSA's implied covenant of good faith and fair dealing. However, PMPA termination claims must be based upon the breach of one of the three elements of the franchise agreement—use of the trademark license, lease of real property, or contract for the supply of fuel. *Barnes,* 795 F.2d at 364. The PMPA is not concerned with "other contractual arrangements which may exist between a franchisor and a franchisee, *e.g.,* credit card arrangements, contracts relating to financing of equipment, or contracts for purchase and sale of tires, batteries, or automotive accessories." *Id.* (*quoting* S.Rep. No. 731, 95th Cong., 2d Sess. 17, 29, *reprinted in* 1978 U.S.C.C.A.N. 873, 876, 888). Thus, even if Petro did breach Florida's implied covenant of good faith and fair dealing by discontinuing BP's pricing and credit card arrangements (a question we need not and do not decide) Petro's actions do not support a PMPA termination claim against BP. If we were to conclude otherwise, then, as BP points out in its brief, "any subsequent breach of contract by an assignee would invalidate the assignment and, theoretically, relieve the assignee of any liability under the franchise agreement." Br. of Appellee at 26.

In sum, Shukla failed to show that BP's assignment to Petro constructively terminated his franchise agreement, either by increasing his burdens under the agreement or by breaching one of the statutory components of his franchise. Thus, the district court properly granted summary judgment in favor of BP on Shukla's PMPA claim.

B. *Fraud Claim*

Shukla's fraud claim is based upon BP's alleged failure to disclose, prior to the signing of the

DLSA, that it intended to sell its Jacksonville-area service stations to Petro. Shukla alleges that while he was negotiating the purchase of his franchise in 1993, BP was actively seeking a buyer for its Jacksonville stations. Shukla expressed reservations about entering into a trial franchise which BP could nonrenew without cause. However, according to Shukla, a BP representative assured him that BP's *de facto* policy was to renew trial franchises in the absence of serious dealer misconduct. Neither this representative nor any other BP personnel informed Shukla that BP planned to sell the station and that BP's assignee, not BP, would be making the decision whether to renew Shukla's trial franchise. Shukla alleges that BP had a duty to disclose its intention to sell the station and that he would not have entered into the DLSA had he known of the intended sale.

BP sought summary judgment on Shukla's fraud claim on a number of grounds. We address only one: PMPA preemption.[6] The PMPA provides as follows:

> [N]o State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1) (1994). This provision explicitly preempts state law actions which relate to the "grounds for, procedures for, and notification requirements with respect to" the termination or nonrenewal of a franchise. *Bellmore v. Mobil Oil Corp.,* 783 F.2d 300, 304 (2d Cir.1986); *see also Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir.1986) (citing *Bellmore* ). Although the PMPA does not preempt every state law related to petroleum industry franchise agreements, Congress "clearly intended to provide uniform minimum standards for the termination and nonrenewal of franchises and to bar state regulation of this area." *Continental Enterprises, Inc. v. American Oil Co.,* 808 F.2d 24, 27 (8th Cir.1986).

BP argues that Shukla's fraud claim is directly related to the nonrenewal of his franchise and, accordingly, is preempted by the PMPA. Shukla contends that the claim is based not upon

---

[6]BP raised preemption in a motion to dismiss, as well as in its motion for summary judgment. The district court rejected BP's arguments both times. The district court's oral grant of judgment as a matter of law on the fraud claim rested not upon preemption, but upon a generalized conclusion that Shukla did not have a fraud claim. *See* R8, Transcript of Pretrial Proceedings.

nonrenewal, but upon BP's failure to disclose the fact that it intended to sell Shukla's station and assign the DLSA. The problem with Shukla's argument is that BP's alleged failure to disclose is material only because the new franchisor, Petro, refused to renew Shukla's franchise.[7] Shukla makes this clear in his Second Amended Complaint, which, after detailing the facts relating to BP's alleged nondisclosure, states as follows:

> On February 14, 1994, Petro sent a letter to Shukla purporting to give Shukla formal notice that the trial franchise agreement would be canceled as of June 19, 1994. Shukla responded to Petro's notice letter by May 11, 1994. Nevertheless, representatives from Petro purporting to act as franchisor, entered on the franchise on or about June 22, 1994 and ordered Shukla to leave the franchise site. *As a result,* Shukla has lost the value of his investment, and/or the net value of the business and/or the net value of future profits (as the station would have operated without Petro's violations of applicable State law).

R1-22, Second Amended Complaint, WW 44-47 (numbering and reference to exhibits omitted) (emphasis added). The damages Shukla allegedly suffered as a result of the fraud flowed directly from Petro's failure to renew his franchise. Moreover, the factual allegations supporting Shukla's fraud claim are nearly identical to the allegations supporting his PMPA constructive termination claim. *See generally id.,* Counts I and II; *see also Esquivel v. Exxon Co., U.S.A.,* 700 F.Supp. 890, 897 (W.D.Tex.1988) (PMPA preempted state law fraud claim where fraud allegations were identical to PMPA wrongful termination allegations). Thus, Shukla's fraud claim is intimately bound up with the nonrenewal of his franchise. The PMPA provides exclusive remedies for disputes relating to the nonrenewal of franchises and preempts state law claims based on nonrenewal, no matter how such claims are characterized.

Shukla relies upon *Pride v. Exxon Corp.,* 911 F.2d 251 (9th Cir.1990), in which the Ninth Circuit concluded that the PMPA did not preempt a state law claim for fraudulent inducement. *Pride* is distinguishable because the franchisee plaintiff in that case (Pride) was not challenging the validity of a termination or nonrenewal. Pride alleged that his franchise agreement with Exxon Corporation ("Exxon") was void because, prior to the signing of the agreement, "Exxon failed to disclose all the matters material to the consideration of the purchase." *Pride,* 911 F.2d at 257.

---

[7]One of the elements of a claim for fraudulent inducement under Florida law is the misrepresentation or nondisclosure of a *material* fact. *Mettler, Inc. v. Ellen Tracy, Inc.,* 648 So.2d 253, 255 (Fla.Dist.Ct.App.1994).

Exxon sold its area stations, including Pride's, to Texaco Corporation ("Texaco"), and Pride entered into a new franchise agreement with Texaco. Pride alleged that Exxon had fraudulently induced him to enter into his initial franchise agreement by misrepresenting its intention to withdraw from the market. The Ninth Circuit concluded that Pride's fraud claim involved the actions of the parties in forming the franchise agreement. The claim could not involve the grounds for, procedures for, or notification requirements with respect to a termination or nonrenewal "because the relationship that the Act governs ha[d] not been formed at that stage." *Id.* at 258. The critical distinction between *Pride* and this case is that the materiality of the alleged nondisclosure in *Pride* was *not* based upon a termination or nonrenewal.[8] Indeed, Pride's franchise agreement with Texaco was intact and he was still operating his station when he filed suit.

The *Pride* court relied upon *O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3rd Cir.1989), in which the Third Circuit ruled that a fraudulent inducement claim was not preempted. O'Shea is likewise inapposite. The preemption issue in *O'Shea* arose in an unusual context. O'Shea's franchisor, Amoco Oil Company ("Amoco"), terminated the parties' franchise agreement because O'Shea failed to comply with a provision in the agreement requiring him to operate his service station 24 hours a day. Prior to the termination, O'Shea sued in state court to enjoin Amoco from enforcing the 24-hour requirement. One of O'Shea's claims was that Amoco had fraudulently induced him to enter into the franchise agreement by promising him that it would modify the 24-hour provision. O'Shea lost the state case, after which Amoco terminated the franchise. O'Shea then brought suit in federal court, alleging violation of a New Jersey statute which prohibited the imposition of unreasonable standards of performance upon a franchisee. The Third Circuit held that this claim was barred by New Jersey's claim preclusion doctrine because it was intimately related to the claims O'Shea had brought in his state court action. O'Shea countered that the state court action could not have had a preclusive effect because the state court lacked jurisdiction to hear the claims brought in that suit, as those claims were preempted by the PMPA. The Third Circuit rejected this argument, concluding

---

[8]It is not clear from the opinion why Pride claimed Exxon's failure to disclose was material, but Pride's complaint apparently centered upon the fact that some of Texaco's policies differed from Exxon's.

that the PMPA had not preempted O'Shea's fraudulent inducement claim. Thus, when O'Shea brought his fraud claim in state court, he was challenging the enforcement of a provision in the franchise agreement, not the termination or nonrenewal of that agreement. Amoco had not terminated the agreement at that time.

This case differs from *Pride* and *O'Shea* because a critical element of Shukla's fraud claim—materiality of the nondisclosure—is the nonrenewal of his franchise.[9] Courts have repeatedly found that the PMPA preempts state law fraud claims which are intimately intertwined with the termination or nonrenewal of a franchise. *See, e.g., Consumers Petroleum,* 804 F.2d at 915-16 (franchisee's fraud claim based upon franchisor's alleged failure to disclose its intention to sell station was preempted because allowing claim to proceed would effectively require provision of earlier notice of nonrenewal than PMPA required); *Continental Enterprises,* 808 F.2d at 26 (franchisee's fraud claim, "no matter how worded, [was] based on a wrongful nonrenewal of the contract" and was therefore preempted by PMPA); *Arbabian v. BP America,* 898 F.Supp. 703, 709-11 (N.D.Cal.1995) (PMPA preempted franchisees' claim that franchisor fraudulently misrepresented that it would sell station to franchisees because finding for franchisees would effectively impose different termination procedure upon franchisor than provided for in PMPA); *Huth v. BP Oil, Inc.,* 555 F.Supp. 191, 192 (D.Md.1983) (fraud claim which asserted that "defendant deliberately induced Mr. Huth to write a post-dated check so that defendant could present the check before the designated date for use of consequent dishonoring as a pretext for terminating the [franchise] agreement" was preempted by PMPA). Thus, the district court's entry of judgment in favor of BP on Shukla's fraud claim was proper. Because the PMPA preempts Shukla's state law fraud claim, we do not reach the other arguments advanced by BP.

V. Conclusion

Shukla's PMPA claim fails because the facts, taken in the light most favorable to Shukla, do not support a constructive termination claim. Moreover, Shukla's fraud claim is preempted by the

---

[9]To the extent that *Pride* and *O'Shea* can be read to indicate that *all* fraudulent inducement claims are immune from the PMPA's preemption clause, we disagree with those opinions.

PMPA.  Accordingly, we affirm the district court's entry of judgment in favor of BP and against Shukla.

      AFFIRMED.