**Nick ARBABIAN, et al., Plaintiffs,**

**v.**

**BP AMERICA, a Delaware corporation, et al., Defendants.**

**No. C-94-0523 SBA.**

United States District Court, N.D. California.

Feb. 9, 1995.

[redacted]

Kim A. Seefeld, Mullen & Henzel, Santa Barbara, California, for plaintiffs.

Clement L. Gynn, Glynn, Cella & Lange, Walnut Creek, California, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SIXTH THROUGH EIGHTH CAUSES OF ACTION

ARMSTRONG, District Judge.

Plaintiffs, who are retail service station dealers, have raised various federal and state law claims against defendants BP America, BP Oil Company, BP Marketing Corporation, and BP Exploration & Oil Incorporated (defendants collectively referred to as "BP" or "defendants"). In September 1994, defendants filed a motion to dismiss plaintiffs' first through eighth causes of action. The hearing on this motion was originally noticed for November 22, 1994 and then renoticed for December 13, 1994. On December 15, 1994, this Court issued an order granting defendants' motion as to the first through fifth causes of action and continuing the hearing as to the sixth through eighth causes of action.[1] (Order Granting Defendants' Motion to Dismiss on the First Through Fifth Causes of Action and Continuing Hearing on the Sixth Through Eighth Causes of Action at 11–12 (filed Dec. 15, 1994) [hereinafter "Order of 12/15/94"].) The Court continued the hearing as to the sixth through eighth causes of action because the parties had not

adequately briefed the issue of whether plaintiffs' state common law fraud (sixth cause of action), negligent misrepresentation (seventh cause of action) and breach of contract (eighth cause of action) claims were preempted by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 et seq. (Order of 12/15/94 at 10.) To give the parties ample time to address this issue, the Court established a briefing schedule and continued the hearing to February 28, 1995. (*Id.* at 11–12.) The parties have submitted the supplemental briefing pertaining to whether plaintiffs' state fraud, negligent misrepresentation and breach of contract claims are preempted. After having read and considered all papers submitted in connection with defendants' motion to dismiss the sixth through eighth causes of action, including all supplemental briefs, and being fully informed, the Court finds for the reasons discussed below that these causes of action are preempted, and consequently GRANTS defendants' motion to dismiss the sixth through eighth causes of action.[2]

### BACKGROUND

In 1989, BP acquired various California assets of Mobil Oil Corporation, including certain Mobil franchises. The majority of plaintiffs are former Mobil franchisees whose gas station franchises were transferred from Mobil to BP. Starting in 1992, BP began a withdrawal from the California market, resulting in the eventual sale of its assets, including the California franchises, to Tosco Corporation ("Tosco"). Through this action, plaintiffs essentially dispute BP's sale of the franchises to Tosco, asserting that BP should have sold the franchises to them. Plaintiffs have raised their dispute and assertion in their Supplemental Complaint, filed August 3, 1994, through 19 causes of action.

In September 1994, defendants moved to dismiss the first through eighth causes of action in the Supplemental Complaint. In the Order of 12/15/94, the Court granted the

1. Pursuant to Local Rule 220–1, the Court found defendants' motion was appropriate for adjudication without oral argument, and therefore did not hold the December 13, 1994 hearing.

2. Pursuant to Local Rule 220–1, this Court finds that defendants' motion to dismiss the sixth through eighth causes of action is suitable for adjudication without oral argument.

motion as to the first through fifth causes of action and continued the hearing as to the sixth through eighth causes of action.

Plaintiffs' first cause of action asserted a claim under the PMPA, the second under Cal.Bus. & Prof.Code § 20999.25(a), the third under Cal.Bus. & Prof.Code § 17200, the fourth for declaratory relief, and the fifth for intentional interference with prospective advantage. Plaintiffs' fourth and fifth causes of action were predicated on a finding that defendants violated the PMPA or Cal.Bus. & Prof.Code § 20999.25(a). As to plaintiffs' third cause of action, plaintiffs alleged that defendants engaged in unfair competition in violation of Cal.Bus. & Prof.Code § 17200 when they (1) committed acts in violation of the PMPA and Cal.Bus. & Prof.Code § 20999.25(a), and (2) engaged in coercive gasoline pricing and accepted illegal kickback payments. Thus, to the extent that the third cause of action involved allegations that the PMPA and Cal.Bus. & Prof.Code § 20999.25(a) were violated, this cause of action was predicated on a finding that defendants violated the PMPA and Cal.Bus. & Prof.Code § 20999.25(a).

In the Order of 12/15/94, the Court determined that Cal.Bus. & Prof.Code § 20999.25(a) was preempted by the PMPA, and therefore dismissed all causes of action predicated on a finding that this section was violated. (Order of 12/15/94 at 5–8.) In connection with their claim under the PMPA, plaintiffs alleged that defendants violated 15 U.S.C. § 2802(b)(2)(E)(iii)(I) by failing to provide plaintiffs with a bona fide offer to purchase the premises upon which the franchises are located prior to the termination of the franchise agreement. Plaintiffs also alleged that defendants violated 15 U.S.C. § 2804(b)(2)(A) by failing to give sufficient notice of the termination of the franchises. As to plaintiffs' PMPA claim, the Court held that defendants did not violate 15 U.S.C. § 2802(b)(2)(E)(iii)(I) because the transfer agreement between BP and Tosco requires Tosco to offer each franchisee a non-discrimi-natory franchise agreement of at least three years duration. (Order of 12/15/94 at 9.) The Court additionally held that defendants did not violate 15 U.S.C. § 2802(b)(2)(A) because they had provided notice of the January 15, 1995 termination on July 1, 1994. (*Id.*) Based on these holdings, the Court found that plaintiffs had failed to state a cause of action under the PMPA, and therefore dismissed all causes of action predicated on a finding that the PMPA had been violated. On this basis, the Court granted defendants' motion regarding the first through fifth causes of action.[3]

The Court now considers defendants' arguments regarding dismissal of the sixth through eighth causes of action, which involve California common law. Plaintiffs' sixth cause of action asserts a claim for fraud, the seventh for negligent misrepresentation, and the eighth for breach of contract. In their initial moving and reply papers, defendants argued that this Court had previously ruled in its order denying plaintiffs' motions for a temporary restraining order ("TRO") and preliminary injunction that plaintiffs' state law claims for fraud, negligent misrepresentation and breach of contract were preempted by the PMPA. On this basis, defendants sought dismissal of plaintiffs' sixth through eighth causes of action. In its order regarding the TRO and preliminary injunction, however, the Court did not address the issue of whether these state law claims were preempted. (*See* Order Denying Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction (filed July 29, 1994).) As the parties' memoranda of points and authority did not adequately brief this issue, the Court required the parties to submit supplemental briefs and continued the hearing to February 28, 1994. As discussed below, the Court now finds that plaintiffs' sixth through eighth causes of action are preempted, and therefore DISMISSES these claims.

---

**3.** The Court notes that, with regard to the third cause of action, the Court stated in the Order of 12/15/94, that: "To the extent the third cause of action involves the PMPA and Section 20999.25(a), the claim is DISMISSED. To the extent the third cause of action involves allegations of coercive gasoline pricing and acceptance of illegal kickbacks, the claim is viable." (Order of 12/15/94 at 10.)

## DISCUSSION

### A. *STANDARD OF REVIEW*

 For purposes of a motion to dismiss under Rule 12(b)(6), a complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). A motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). When assessing a Rule 12(b)(6) motion, the court is confined to consideration of the allegations in the pleadings and any documents attached to the pleadings. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 (9th Cir.1990).

### B. *THE MERITS*

#### 1. *Standards Regarding Preemption*

 The PMPA has two main objectives. The first is to protect petroleum marketing franchisees against arbitrary or discriminatory terminations or nonrenewals of their service station franchises. *Millett v. Union Oil Co. of Cal.,* 24 F.3d 10, 13 (9th Cir.1994) (citing S.Rep. No. 731, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.C.C.A.N. 873, 877 [hereinafter "Senate Report, 1978 U.S.C.C.A.N. at __"] ). The second is to provide " 'adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences.' " *Id.* (quoting Senate Report, 1978 U.S.C.C.A.N. at 877).

To accomplish these objectives, "Congress enacted a set of uniform rules to govern the grounds, required notice, and procedures for termination or nonrenewal of petroleum marketing franchises." Theresa L. Kruk, *Preemptive Scope of § 106(a) of Petroleum Marketing Practices Act (15 USCS § 2806(a)),* 103 ALR Fed. 698, 704 (1991) [hereinafter "103 ALR Fed at ——"]. To insure nationwide uniformity, Congress explicitly included a preemption provision in the PMPA, which provides:

> To the extent that any provision [of the PMPA] applies to the termination ... of any franchise, or to the nonrenewal ... of any franchise relationship, no state ... may adopt, enforce or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination ... of any such franchise or to the nonrenewal ... of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of [the PMPA].

15 U.S.C. § 2806(a). With regard to this preemption provision, the Ninth Circuit has stated: "In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law. The purpose of uniformity would be frustrated if the PMPA was not given its preemptory intent. Accordingly, we find the PMPA preempts all inconsistent state law." *In re Herbert,* 806 F.2d 889, 892 (9th Cir.1986); *see also Millett,* 24 F.3d at 13 (quoting *Herbert,* 806 F.2d at 892).

 The policy of encouraging nationwide uniformity through preemption is not without consequences to franchisors and franchisees. Without this policy, both franchisors and franchisees would be free to engage in conduct and to pursue state law claims that are now foreclosed to them. By enacting a clear preemption provision, however, Congress has clearly indicated its finding that the policy behind uniformity substantially outweighs any countervailing policies underlying the availability of such conduct or state law causes of action. Thus, franchisors and franchisees must bear the consequences of potential preemption in mind when conducting business, and must minimize the risks associated with preemption by channeling their behavior so that it conforms to the provisions of the PMPA. Hence, franchisors and franchisees are presumed to know the requirements of the PMPA. *Cf. Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir.1986) ("A franchisee is presumed to be aware of the notice requirements [of the PMPA] at the time it signs a franchise agreement."). Therefore, any franchisor or franchisee who

attempts to terminate a franchise or not renew a franchise relationship on grounds different than or in a manner different than that specified under the PMPA bears the risk of any loss associated with the failure of such termination or nonrenewal.

Despite Congress' clear expression that the PMPA preempts inconsistent state law, the reach of the PMPA preemption provision is somewhat uncertain. 103 ALR Fed. at 705. Assessing the preemption provision's reach with regard to state statutory and common law claims has involved courts in the statutory construction of the provision. *Id.* In general, two views—an expansive preemption view and a restrictive preemption view—have arisen regarding the preemption provision's reach. *Id.*

The expansive preemption view is that the PMPA preempts any state law that affects the termination of franchises or nonrenewal of franchise relationships. *See* 103 ALR Fed. at 705. This expansive view has been adopted by the Fourth and Eighth Circuits. *Jimenez v. BP Oil, Inc.*, 853 F.2d 268, 272–74 (4th Cir.1988) (finding that PMPA supersedes all state law with respect to the regulated subject matter (i.e., with respect to termination of franchises or nonrenewal of franchise relationships); rejecting the more restrictive preemption view expounded in *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300 (2nd Cir.1986)), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168, *reh'g denied*, 490 U.S. 1095, 109 S.Ct. 2443, 104 L.Ed.2d 999 (1989); *Continental Enterprises, Inc. v. American Oil Co.*, 808 F.2d 24, 27–28 (8th Cir.1986) (holding that, where the state law claim "arises out" of the franchise termination or is "an incident" of termination, the claim is preempted; rejecting the more restrictive preemption view expounded in *Esso Standard Oil Co. v. Department of Consumer Affairs*, 793 F.2d 431 (1st Cir.1986)).

The restrictive preemption view is that the PMPA preempts only those state laws that purport to regulate the grounds for, procedures for, and notification requirements of terminations of franchises and nonrenewals of franchise relationships. *See* 103 ALR Fed. at 705. Along with the First, Second,

Third, Sixth and District of Columbia Circuits, the Ninth Circuit has adopted this restrictive view of preemption. *Pride v. Exxon Corp.*, 911 F.2d 251, 257–58 (9th Cir. 1990) (finding that state law regarding fraud in the formation of contracts was not preempted by the PMPA because it did "not implicate the grounds for, procedures for or notification requirements of termination and nonrenewal under the [PMPA]") (adopting standard in, but distinguishing holding of *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907 (6th Cir.1986)) (citing *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300 (2nd Cir. 1986)) (adopting reasoning in *O'Shea v. Amoco Oil Co.*, 886 F.2d 584 (3rd Cir.1989)); *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 592–93 (3rd Cir.1989) (holding that PMPA preempts only state laws that regulate the grounds for, procedures for, and notification requirements with respect to termination of petroleum franchises); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 915 (6th Cir.1986) (holding that the PMPA preempts state law that affects or varies the grounds for, procedures for, and notification requirements regarding termination or nonrenewal of petroleum franchises); *Esso Standard Oil Co. v. Department of Consumer Affairs*, 793 F.2d 431 (1st Cir.1986) (adopting a restrictive view of the scope of the PMPA preemption provision, as the adoption of a more expansive view would invalidate all state legislation having any impact on petroleum franchisors); *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2nd Cir.1986) (holding that PMPA preempts only state laws that directly address the grounds for, procedures for, and notification requirements with respect to termination or nonrenewal of petroleum franchises); *Davis v. Gulf Oil Corp.*, 485 A.2d 160, 169 (D.C.App.1984) (language of the PMPA preemption provision provides for a limited scope of preemption).

In accordance with the Ninth Circuit's authority, this Court applies the restrictive preemption view in determining whether plaintiffs' fraud, negligent misrepresentation and breach of contract claims are preempted. As discussed below, the Court holds that, under a restrictive preemption view, these claims are preempted. The Court therefore notes

that, even if it had applied the more expansive preemption view, plaintiffs' claims would nevertheless be preempted.

### 2. *Application*

#### a. *Breach of Contract*

■ Plaintiffs allege that, after defendants rescinded their notices of termination, on or about October 13 and 14, 1993, December 3, 1993 and January 5 through 7, 1994, "plaintiffs and defendants entered into an oral agreement whereby defendants promised to sell to plaintiffs the real property upon which" the franchises were located. (Supplemental Complaint ¶ 121 at 97:1–10; ¶ 134 at 100:17–22.) Plaintiffs also allege that, in accordance with the oral agreement, thirteen plaintiffs submitted fair market value offers to BP, but BP accepted and executed only three. BP then discontinued any discussions with regard to selling its franchise interests. Based on these allegations, plaintiffs assert a breach of contract claim against defendants.

The Court finds that this claim pertains to the procedures for and grounds for terminating a franchise, and therefore is preempted by the PMPA.[4] 15 U.S.C. § 2802(b) specifies the procedures and grounds for termination of a franchise. Under 15 U.S.C. § 2802(b)(1), a franchisor may terminate a franchise if it meets the notification requirements under 15 U.S.C. § 2804 and if termination is based upon one of the grounds specified in 15 U.S.C. § 2802(b)(2). Under 15 U.S.C. § 2802(b)(2)(D), a permissible ground for termination exists when the franchisor and the franchisee agree, in writing, to terminate the franchise and the agreement to terminate is not entered into more than 180 days before the date of termination, the franchisee is provided a copy of the agreement, and the franchisee does not repudiate the agreement within seven days after receipt of the copy of the agreement. In the instant action, because the alleged oral promise for defendants to sell the franchises to plaintiffs would result in the termination, or the end, of the franchises through agreement by the parties, the alleged oral promise implicates the grounds for termination specified in 15 U.S.C. § 2802(b)(2)(D) as well as the procedures required to effect termination in accordance with that section. As the alleged oral promise invokes procedures for termination that are not consistent with the provisions of § 2802(b)(2)(D), e.g., termination through an oral agreement as opposed to termination through a written agreement, the PMPA preempts plaintiffs' state law breach of contract claim. The Court therefore DISMISSES plaintiffs' breach of contract claim. The Court notes that plaintiffs will not be able to assert that defendants somehow violated § 2802(b)(2)(D) because the prerequisites of that section have not been met. In particular, as alleged by plaintiffs, plaintiffs and defendants did not enter into a written contract to terminate the franchise, but an oral contract. Furthermore, as no written contract existed, plaintiffs, the franchisees, never received a copy of the written agreement, and therefore, the conditions in § 2802(b)(2)(D)(ii) & (iii) were not satisfied.

#### b. *Fraud and Negligent Misrepresentation*

■ In sum, plaintiffs' fraud and negligent misrepresentation allegations are as follows: Defendants made false representations that they would sell plaintiffs the franchises if plaintiffs submitted written fair market value offers for the franchises; at the time defendants made the representations, they knew the representations were false or had no grounds to believe they were true; defendants made the representations with the intent to induce plaintiffs to overpay for the properties and to deprive plaintiffs of their preferential rights; plaintiffs relied on the misrepresentations by obtaining appraisals of

---

4. The Court notes that, even if it had not found the breach of contract claim preempted, the claim nevertheless appears barred under the statute of frauds. Under California's statute of frauds, contracts involving the sale of real property must be in writing. Cal.Civ.Code § 1624. Plaintiffs allege: "[P]laintiffs and defendants entered into an *oral* agreement whereby defendants promised to sell to plaintiffs the real property upon which" the franchises were located. (Supplemental Complaint ¶ 134 at 100:17–22 (emphasis added).) Because plaintiff's complaint alleges an oral contract for the sale of real property and because it does not contain any allegations pertaining to an exception to the statute of frauds, plaintiff's breach of contract claim appears facially defective.

**710**

their franchises, pursuing loan commitments, submitting fair market value offers, and delaying the filing of this suit; and plaintiffs were damaged by this reliance.

■ The alleged misrepresentations made by defendants relate to the manner, or the procedure, by which the parties would end, or terminate, the franchises. Further, the alleged misrepresentations seek to impose requirements that are different than those specified under the PMPA. Essentially, defendants allegedly stated that they would sell the franchises to plaintiffs, thereby terminating them, if plaintiffs submitted fair market offers to defendants. This procedure for termination is not the same as required by the PMPA. *See* 15 U.S.C. §§ 2804(b)(1) & (2), 2802(b)(2)(D). If plaintiffs were to prevail on their misrepresentation claims, defendants would be penalized for not following the procedure they allegedly represented they would follow. As the procedure defendants allegedly represented they would follow is not the same as that required by the PMPA, defendants would be penalized for their failure to follow a procedure which is different than that required by the PMPA. As 15 U.S.C. § 2806(a) requires preemption when the effect of violating a state law is not the same as the effect of violating the PMPA, preemption is required with regard to plaintiffs' misrepresentation claims. *See* 15 U.S.C. § 2806(a) ("no state ... may adopt ... any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination ... unless ... such law or regulation ... is the same as the applicable provision" of the PMPA).

Supporting this Court's holding that plaintiffs' misrepresentation claims are preempted is *Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907 (6th Cir.1986). In *Consumers,* the Sixth Circuit found that misrepresentations made during the course of the franchise relationship regarding the franchisor's withdrawal from the market and termination of the franchisee's franchise were preempted by the PMPA. *Id.* at 909, 914–15. In the case at bar, defendants' misrepresentations regarding their termination of plaintiffs' franchises—i.e., their alleged representation that

they would sell the franchises to plaintiffs— were made during the course of the franchise relationships. Thus, under *Consumers,* plaintiffs' misrepresentation claims are preempted.

The Court notes that, in *Pride v. Exxon,* the Ninth Circuit distinguished *Consumers* from the case before it to find no preemption. 911 F.2d 251, 257–58 (9th Cir.1990). In *Pride,* the Ninth Circuit found that because the alleged misrepresentations occurred *before* the franchise relationship commenced, the initial validity of the underlying franchise contract was called into question. *Id.* at 258. The Ninth Circuit therefore found that the grounds for, procedures for, and notification requirements regarding terminations under the PMPA were not implicated. *Id.* at 258. Specifically, the Ninth Circuit stated:

[T]he misrepresentation claim, as formulated by Pride, involves the actions of parties in forming the contract. *Consumers Petroleum,* on the other hand, involved a situation where the two parties were already in an existing contractual relationship and the franchisor then made misrepresentations regarding the withdrawal or failure to renew provisions of the [PMPA]. This distinction is crucial, since as the court in *Consumers Petroleum* observed, the Act "does not preempt every state law that relates remotely to the termination or nonrenewal of petroleum franchises; but it does preempt any state law with respect to 'grounds for, procedures for, and notification requirements' with respect to terminations and nonrenewals." Oregon state law regarding fraud in the formation of contracts does not implicate the grounds for, procedures for or notification requirements of termination and nonrenewal under the [PMPA] because the relationship that the [PMPA] governs has not been formed at that stage. *Consumers Petroleum* is thus distinguishable.

*Pride,* 911 F.2d at 257–58 (citations omitted). Thus, although the Ninth Circuit does not specifically state in *Pride* that it would have found preemption if the misrepresentations occurred during the course of the franchise relationship, its discussion of *Consumers* indicates that, if faced with that situation, it

most likely would have found preemption. Even if the Ninth Circuit would not have found preemption under such circumstances, however, preemption of plaintiffs' misrepresentation claims is nonetheless appropriate because, as discussed above, the claims have the effect of altering the PMPA's grounds, procedures and penalties relating to the termination of a petroleum franchise.

As a final matter, the Court determines that its decision to find preemption is consistent with the policy of ensuring uniform application of the PMPA, as finding no preemption would allow these parties to terminate franchises on grounds different than those permitted under the PMPA and in a manner different than that permitted under the PMPA. Furthermore, as to plaintiffs' misrepresentation claims, because the procedures that defendants allegedly represented they would follow to terminate the franchises were not the same as those under the PMPA and because plaintiffs are presumed to know the requirements of the PMPA, plaintiffs bore the risk that defendants would not follow the termination procedures they allegedly represented they would follow. Moreover, given that plaintiffs are presumed to know the requirements of the PMPA, they are presumed to know that franchises cannot be terminated in a manner different than specified in the PMPA. Thus, plaintiffs could not have reasonably relied on any representations by defendants regarding termination of their franchises in a manner different than specified under the PMPA. Consequently, even if plaintiffs' misrepresentation claims were not preempted, they would fail for inadequate allegations with regard to their reliance.

### CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs' sixth through eighth causes of action are preempted. Accordingly,

IT IS HEREBY ORDERED THAT the sixth through eighth causes of action in the Supplemental Complaint are DISMISSED. The Court notes this resolution does not dispose of the instant action, as plaintiffs'

ninth through 19th causes of action are still pending.

IT IS SO ORDERED.