United States Court of Appeals,

Eleventh Circuit.

Nos. 96-4810, 96-4988.

Warren SECKLER and Warsec, Inc., a Florida Corporation, Plaintiffs-Appellants,

v.

STAR ENTERPRISE, a New York Partnership, Defendant-Appellee.

Warren Seckler, Warsec Inc., a Florida corporation, Plaintiffs-Appellees,

v.

Star Enterprise, a New York Partnership, Defendant-Appellant.

Oct. 21, 1997.

Appeals from the United States District Court for the Southern District of Florida. (No. 94-8672-CV-KLR), Kenneth L. Ryskamp, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and WOOD[*], Senior Circuit Judges.

WOOD, Senior Circuit Judge:

For more than twenty years, Warren Seckler worked at and operated a Texaco gasoline station in Boca Raton, Florida. He inherited the business from his father, who leased the station from 1973 to 1983, when Seckler took over the operations. Seckler formed Warsec, Inc. in 1991 to operate the station and was its president and sole shareholder. He devoted much of his energy to managing the station and building its goodwill, so when Star Enterprises informed him that it was selling the station, Seckler, not surprisingly, wanted to purchase it. He allegedly sold his home for less than its fair market value in order to get the money to make a down payment, and was prepared to accept Star's bona fide offer to sell when Star abruptly decided not to make that offer. Instead, it offered to renew Warsec, Inc.'s franchise agreement. Seckler grudgingly signed the lease, but felt misused. He filed this lawsuit personally and on behalf of Warsec.[1] He alleges a violation of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 et. seq. (1982), as well as various

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1]For purposes of this opinion, we refer to Seckler and Warsec, Inc. collectively as "Seckler."

state law claims including fraud and misrepresentation. The district court dismissed Seckler's state law claims, holding that the PMPA preempted them. The court later granted summary judgment for Star on the PMPA claim, holding that Seckler did not have a cause of action under the PMPA. Seckler appeals, and Star cross-appeals the district court's determination that Seckler has standing to sue. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 15 U.S.C. § 2801 *et. seq.* (PMPA).

## I. Facts

We recite the facts as given in Seckler's brief. In 1993, rumors circulated among Star's dealer network in southern Florida that Star was considering withdrawing from the market and selling its service stations to the occupying franchisees. Aware that the PMPA gave him only ninety days in which to purchase his station if it were offered to him, Seckler listed his home for sale and attempted to position himself and Warsec, Inc. to be ready to make the purchase.[2]

On February 1, 1994, Seckler received a letter from Star saying that Star had contacted several area banks about assisting its franchisees in purchasing their stations. The banks which had indicated to Star that they would be interested were listed in the letter. A few weeks later, on March 7, 1994, Star wrote Seckler a letter stating that it had decided to sell his station and equipment and that his franchise was being terminated effective June 30, 1994. Star wrote that it would make Seckler a bona fide offer to sell the property to him "in accordance with the Petroleum Marketing Practices Act." Seckler then began to actively pursue selling his house in order to be financially prepared to purchase the gas station before June 30. He spoke to Star representatives several times and informed them during their conversations that he wished to purchase the station and had put his home up for sale in order to do so. On May 8, 1994, Seckler sold his home.

---

[2]PMPA § 2802(b)(3)(D)(iii) provides a franchisee with only a ninety-day period after notification of a franchisor's intention to sell the premises and, thereby, terminate the franchise. During that time, the franchisee must position himself to be ready to take title at the end of the ninety days.

Shortly thereafter, Seckler received two letters from Star dated May 25, 1994. The first stated that Star was unilaterally extending its termination and non-renewal date from June 30 to September 30, 1994. The second letter rescinded the March 7 notice of termination and non-renewal, but confirmed Star's intentions to make Seckler a bona fide offer to purchase the property. Concerned, Seckler spoke to Star's representatives, who assured him that this postponement was due only to an overabundance of paperwork and that his bona fide offer would be coming shortly.

Seckler waited several more months and grew more worried. He closed on the sale of his home on July 5, 1994. On August 1, 1994, Seckler's attorney sent Star a letter inquiring about when the bona fide offer would be forthcoming and emphasizing that Seckler had relied to his detriment on Star's representations that it would sell the station to him. Star's response came on August 15, 1994, and it astonished Seckler, for it said that Star had decided not to sell the station at all. Apparently, no one at Star with the appropriate authority had ever made the determination to sell Seckler's station, despite the representations of those employees who communicated with Seckler. The request for sale approval had not even been submitted to the person with the lowest level of authority to make the determination to sell the property, J.W. Bernitt, until May 29, 1994. On June 23, 1994, Bernitt declined to approve the sale. Although Seckler's district manager was told of this decision on June 28, 1994, no one notified Seckler until August 15, 1994.

Instead of giving Seckler the bona fide offer he was awaiting, Star stated that it would offer Seckler another three-year franchise renewal agreement. Star also informed Seckler that if he did not sign the agreement in a timely manner, his franchise would be terminated or nonrenewed. Seckler signed the papers and returned them to Star with a letter reserving his and Warsec, Inc.'s rights. He then filed suit against Star in the district court, alleging causes of action based on a violation of the PMPA as well as state law claims including breach of contract, promissory estoppel, fraud, negligent misrepresentation and intentional infliction of emotional distress, and seeking

compensatory and punitive damages as well as specific performance of Star's offer to sell him the station premises.

The district court, on Star's motion to dismiss, held that PMPA § 2806 preempted all of Seckler's state law claims because they each arose out of or were incidental to the renewal of Seckler's franchise and the notice of termination he received. The court denied Star's motion to dismiss Seckler's PMPA claim, finding that Seckler had stated a claim as to whether Star had violated PMPA § 2802(D)(iii)(I), and it also held that Seckler had standing to sue. Star then moved for summary judgment on the PMPA claim. The court granted the motion, holding that the PMPA did not apply to the case because Seckler's franchise was renewed and the PMPA addresses only franchise terminations and non-renewals. The court also refused to reconsider its decision to dismiss Seckler's state law claims. On appeal, we affirm the district court's conclusions that Seckler had standing to sue Star and that he could not state a claim under the PMPA, but we reverse the court's determination that the PMPA preempted Seckler's state law claims.

## II.

We review the district court's grant of summary judgment *de novo,* applying the same legal standard as the district court. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1117 (11th Cir.1993). According to that standard, we must determine whether, after considering all the evidence, any genuine issues of material fact exist which would necessitate a trial. Fed.R.Civ.P. 56(c). Furthermore, we must consider the evidence in the light most favorable to Seckler, the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1985). Finally, we interpret the PMPA liberally in order to effect its remedial purpose. *See Doebereiner v. Sohio Oil Co.,* 880 F.2d 329, 331 (11th Cir.1989), amended at 893 F.2d 1275 (1990).

## A.

We begin with Seckler's appeal of the district court's conclusion that he could not state a claim under the PMPA. The PMPA, promulgated for the purpose of protecting petroleum franchisees from franchisors' arbitrary or discriminatory decisions to terminate or non-renew

4

franchise leases, provides standards and procedures which a franchisor must follow when terminating or non-renewing a franchise. 15 U.S.C. § 2804; *see Shukla v. BP Exploration & Oil, Inc.,* 115 F.3d 849, 852 (11th Cir.1997); *Beachler v. Amoco Oil Co.,* 112 F.3d 902, 904 (7th Cir.1997). The statute allows a franchisee to bring a civil action against a franchisor in any situation where the franchisor fails to follow those procedures. 15 U.S.C. § 2805(a). Seckler has brought such a claim, alleging that by rescinding its notice of termination and non-renewal and refusing to provide him with a bona fide offer to sell the station property, Star failed to act in good faith and in the normal course of business and acted in a discriminatory and arbitrary manner towards him. In order to obtain relief under the PMPA, however, Seckler must prove that his franchise was terminated or non-renewed. 15 U.S.C. § 2805(c).

The district court found that Seckler could not meet that burden and so could not state a claim under the PMPA. He could not prove that his franchise was terminated or non-renewed, the court explained, because Star rescinded its notice of termination and renewed Seckler's franchise. In granting Star's motion for summary judgment, the district court relied principally on *Akky v. BP America,* 73 F.3d 974 (9th Cir.1996), where a petroleum franchisor gave the plaintiff franchisee a notice of termination, hesitated about its decision to withdraw from the market, and then changed its mind and rescinded the notice of termination. Because there was no termination nor any coercive or fraudulent behavior on the part of the defendant franchisor, the Ninth Circuit refused to grant relief under the PMPA. *Id.* at 975. The district court found Seckler's case to be analogous and followed the Ninth Circuit's reasoning.

Seckler claims this was error, seizing on the portion of the *Akky* opinion where the court, referring to *Pro Sales, Inc. v. Texaco, U.S.A.,* 792 F.2d 1394 (9th Cir.1986), notes that "because this case does not present claims of fraud or deceptive concealment, or other inequitable conduct, we need not reach possible questions of remedies under the PMPA where such claims are made and proved." *Akky* at 975. Seckler argues that his case is just such a case because he has alleged that Star acted in a fraudulent and deceptive manner in telling him it was going to sell the station

5

premises and then rescinding that offer. We disagree. Seckler does not allege that Star acted fraudulently in getting him to sign the new lease; it was similar to the old one and did not contain provisions that were unfavorable to Seckler. Star did present the new lease to Seckler on a "take it or leave it" basis, but that was no different from the way it presented any of the earlier leases. There is no evidence that Star made coercive threats of termination, or that the new franchise lease was inequitable as was the case in *Pro Sales*. Finally, Star was within its rights under the PMPA when it notified Seckler that it was not renewing his franchise, and it was within its rights when it rescinded that notice.[3] *See Akky* at 975. When Star offered Seckler another franchise lease instead of making a bona fide offer to sell the premises it did not contravene any portion of the PMPA because "[a]s the statute makes clear, the opportunity to purchase need only be afforded a dealer if the franchise relationship is not being renewed." *Beachler,* 112 F.3d at 909. Because Star renewed Seckler's franchise, it had no duty to offer Seckler the chance to purchase his station.

Seckler argues that a franchisee need only receive notice of termination or non-renewal to sue a franchisor under the PMPA, citing *Ketterle v. B.P. Oil, Inc.,* 909 F.2d 425 (11th Cir.1990). In that case, the Ketterles, franchisees of a Gulf gasoline station (a BP property), received a notice of termination from BP after BP learned that their station had closed before midnight on ten consecutive nights in violation of the franchise agreement. The Ketterles sued under the PMPA to prevent the termination, claiming that the PMPA prevented BP from terminating their franchise for that reason. After finding that the Ketterles presented "a serious question constituting a fair ground for litigation," the district court enjoined BP from terminating the franchise. *Id.* at 426-27. BP then withdrew its notice of termination, and the court dismissed the case as moot and denied the Ketterles' motion for attorney fees. *Id.* at 430. They appealed, and this court reversed and allowed the motion, holding that although the case had been dismissed, the Ketterles had obtained full relief in the form of the injunction, which entitled them to receive the attorney fees. *Id.* at 430-31.

---

[3]Star was not, however, within its rights in misleading Seckler, as he alleges. We address this point in Section B.

Seckler contends that *Ketterle* supports his argument because the court allowed the Ketterles to bring a PMPA claim even after BP had rescinded its notice of termination. This is clearly not the case. First, neither this court nor the district court in *Ketterle* decided whether the Ketterles could sue under the PMPA after they had received notice of termination but before their franchise was actually terminated. In addition, the Ketterles had a stronger argument than Seckler that the PMPA applied to their situation. When the Ketterles sued BP, their franchise was clearly threatened with termination, which the PMPA addresses. They sued to prevent that termination which, they alleged, contravened the PMPA. By contrast, when Seckler sued there was no threat of termination or non-renewal; he had just signed a new franchise agreement. He is not challenging a decision to terminate or non-renew his franchise; rather, he is challenging Star's rescission of its decision. The PMPA does not articulate rules for when a franchisor may or may not rescind a notice of termination or non-renewal.

*O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3d Cir.1989), another case on which Seckler relies to support his contention that the PMPA applies to his case, is likewise distinguishable. In that case Amoco notified O'Shea, a franchisee, that it was terminating his franchise because he had failed to comply with its requirement that he operate his station twenty-four hours a day. He sued soon after receiving his notice, before the termination took effect. The district court and the Third Circuit agreed that O'Shea could challenge the impending termination under the PMPA, but held that the PMPA permitted Amoco to terminate the franchise. Seckler quotes a portion of the opinion where the court remarks, "[o]nce the termination notice has been served, a franchisee can bring a PMPA action in federal court...." *Id.* at 593, and argues that this supports his position. We do not agree. Were he challenging an impending termination of his franchise, which the PMPA specifically addresses, he could certainly bring a PMPA action. But Seckler is trying to use the PMPA to force Star to terminate his franchise and make him a bona fide offer to sell the station premises. The PMPA was not written to allow franchisees to do that. *See Beachler,* 112 F.3d at 909-10.

The PMPA gives explicit guidelines as to how a franchisor must proceed when terminating or non-renewing a franchise. Seckler does not dispute that Star, in sending him notices of non-renewal, followed the rules set forth in PMPA § 2804. He now wants to use the PMPA to prevent Star from changing its mind about not renewing his franchise. While the PMPA was written to curtail some of the petroleum companies' business practices, it does not go so far as to prevent a petroleum company from rescinding a notice of non-renewal. *See Akky* at 975. Because Seckler cannot prove that Star terminated or non-renewed his franchise, *see Beachler* at 910, the district court correctly held that the PMPA does not apply to his claim.

B.

We next turn to Seckler's contention that the district court erred when it held that the PMPA preempted his state law claims against Star. 15 U.S.C. § 2806 governs the relationship between the PMPA and state and local laws. Specifically, it provides that

> (a)(1) To the extent that any provision of this subchapter applies to the termination, (or the furnishing of notification with respect thereto) of any franchise, or to the non-renewal (or the furnishing of notification with respect thereto) of any franchise relationship, no state or any political subdivision thereof may adopt, enforce, or continue in effect any provisions of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

The district court found that all of Seckler's state law claims against Star arose out of the notification of non-renewal and the subsequent renewal of Seckler's franchise, and they were all tied to Star's failure to give him a bona fide offer to purchase the station premises. The court also considered it important that Seckler referred to the allegations in his PMPA claim to support his state law claims in his amended complaint. Concluding, the court held that the PMPA preempted Seckler's claims.

The PMPA's preemption provision has been the source of disagreement among the Circuits. The Fourth and Eighth Circuits have adopted an expansive view of PMPA preemption, holding that "the PMPA preempts any state law that affects the termination of franchises or nonrenewal of franchise relationships." *Arbabian v. BP America,* 898 F.Supp. 703, 708 (N.D.Cal.1995); *see Jimenez v. BP Oil, Inc.,* 853 F.2d 268, 272-74 (4th Cir.1988); *Continental Enterprises, Inc. v.*

8

*American Oil Co.,* 808 F.2d 24, 27-28 (8th Cir.1986). The First, Second, Third, Sixth and Ninth Circuits have instead adopted a restrictive preemption view which holds that "the PMPA preempts only those state laws that purport to regulate the grounds for, procedures for, and notification requirements of terminations of franchises and nonrenewals of franchise relationships." *Arbabian,* 898 F.Supp. at 708; *see Pride v. Exxon Corp.,* 911 F.2d 251, 257-58 (9th Cir.1990); *O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3rd Cir.1989); *Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907 (6th Cir.1986); *Esso Standard Oil Co. v. Department of Consumer Affairs,* 793 F.2d 431 (1st Cir.1986); *Bellmore v. Mobil Oil Corp.,* 783 F.2d 300, 304 (2d Cir.1986). This court recently addressed the issue for the first time in *Shukla v. BP Exploration & Oil, Inc.,* 115 F.3d at 855, and used the restrictive view of PMPA preemption adopted by the majority of the circuits. *Id.* at 855 (*citing Bellmore,* 783 F.3d at 304; *Consumers Petroleum,* 804 F.2d at 915). *Shukla* notes, however, that "although the PMPA does not preempt every state law related to petroleum industry franchise agreements, Congress "clearly intended to provide uniform minimum standards for the termination and nonrenewal of franchises and to bar state regulation of this area.' " *Id.* (*citing Continental Enterprises,* 808 F.2d at 27).

Seckler has alleged state law claims against Star for breach of contract, promissory estoppel, fraud, negligent misrepresentation and intentional infliction of emotional distress. Clearly, none of the relevant state laws directly addresses the termination or non-renewal of petroleum franchises. Seckler is not invoking a Florida state law which provides different regulations than the PMPA for terminating or non-renewing a franchise; his claims are run-of-the-mill tort and contract claims. We must therefore decide whether allowing Seckler to proceed with these claims would frustrate the statutory objectives of the PMPA.

The district court relied primarily on *Arbabian,* 898 F.Supp. 703, in concluding that the PMPA preempted Seckler's state law claims. In *Arbabian,* BP, the franchisor, rescinded a notice of termination it had sent the plaintiffs and made an oral agreement to sell them the land on which the franchises were located. After the plaintiffs submitted fair market value offers as required by

the agreement, however, BP refused to sell. The plaintiffs sued for breach of contract, fraud and negligent misrepresentation. The *Arbabian* court found that the plaintiffs' breach of contract claim was preempted because it involved the procedures and grounds for termination of a franchise. The court explained that the oral agreements to sell the land would have led to termination of the franchises, and because the PMPA does not provide for termination through an oral agreement, enforcing that oral agreement would have forced BP to follow procedures for termination contrary to the PMPA procedures. *Id.* at 709. Thus, the PMPA preempted the breach of contract claim. The court next turned to the plaintiffs' fraud and negligent misrepresentation claims. According to the oral agreement, BP had promised the plaintiffs that it would terminate their franchises and sell them if the plaintiffs submitted fair market value offers to BP. This, again, is a procedure for terminating a franchise that the PMPA does not require. If the plaintiffs were successful on their fraud and misrepresentation claims, the court reasoned, BP would be penalized for failing to follow a procedure which was different from PMPA procedures. *Id* at 710. The PMPA thus preempted Arbabian's state law claims. The district court in this case concluded that by this reasoning, the PMPA preempted Seckler's state law claims.

We find, however, that *Arbabian* can be distinguished from Seckler's case. The thrust of the argument in *Arbabian* is that allowing the plaintiff to pursue state law contract and tort claims against the franchisor would have penalized the franchisor for failing to do something that the PMPA did not require, and, essentially, would have created a new state rule that contradicted the PMPA. *See also Consumers Petroleum,* 804 F.2d at 915. That will not happen if Seckler's state law claims are allowed to proceed. The terms of Star's offer to sell Seckler his franchise did not differ from the requirements for terminating or non-renewing a franchise under the PMPA. Because of this, allowing Seckler to proceed with his breach of contract claim would not force Star to follow procedures for termination or non-renewal that would be inconsistent with the PMPA. As for the fraud and negligent misrepresentation claims, Star did not tell Seckler that it would sell him the franchise if he would do something in return (such as submit a fair market value offer). It told

10

Seckler that it had decided in the normal course of business to non-renew his franchise and sell it to him, the very procedure required by the PMPA. If Seckler is successful with his fraud and misrepresentation claims, Star will not be penalized for failing to follow procedures different from those in the PMPA. It will not be penalized for rescinding its offer, which the PMPA allows. If Seckler is successful, Star will be penalized for sending him false notices of non-renewal, something the PMPA does not permit and was not written to protect. Allowing these claims to proceed will not result in any state law inconsistent with the requirements of the PMPA and the uniformity of the federal law will not be destroyed.[4]

*Shukla,* 115 F.3d 849, is similarly distinguishable. There, this court held that the PMPA preempted a state fraud claim brought by a franchisee against a franchisor. In that case, Shukla entered an agreement to lease a BP station and sell BP products. The franchise was subject to a one-year trial period, and BP had the option to renew the franchise after that year. Six months into the first year, BP sold all of its stations in Shukla's area to Petro Distributing and assigned Shukla's franchise agreement to Petro. When the trial period expired, Petro refused to renew Shukla's franchise. Shukla sued, claiming that BP constructively terminated his franchise when it assigned it to Petro and that BP fraudulently convinced him to sign the franchise agreement. *Id.* at 851. On appeal, this court held that the PMPA preempted Shukla's fraud claim because it was directly related to the nonrenewal of his franchise. *Id.* at 855-56. As the court noted, "[c]ourts have repeatedly found that the PMPA preempts state law fraud claims which are intimately intertwined with the termination or nonrenewal of a franchise." *Id.* at 857 (citing cases). By contrast, as we discussed above, Seckler's case does not involve the termination or non-renewal of a franchise because his franchise was renewed. Seckler is challenging Star's decision to renew his franchise, not a decision to terminate or non-renew it. We reasoned above that the PMPA did not apply to the case for that very reason. We find it illogical and inequitable to say in one breath that the PMPA does not apply

---

[4]This result is not inconsistent with our conclusion above that Star had the right to rescind its offer to sell Seckler the franchise; although the PMPA gives Star the right to rescind an offer to sell, it does not give Star the right to mislead Seckler in the process, as he alleges.

to Seckler's case and in the next to say that the PMPA preempts his state law claims.[5] The PMPA was written to create a uniform federal law regarding the procedures for terminating and non-renewing petroleum franchises, and the preemption provision furthers this purpose. The PMPA was not written to allow petroleum franchisors to hide behind the preemption provision to avoid tort, contract or fraud suits brought by franchisees with regard to actions that do not constitute termination or non-renewal of a franchise or notification of such action. We hold that Seckler may proceed with his state law claims against Star.

## C.

We turn now to Star's cross-appeal which challenges the district court's determination that Warren Seckler had standing to sue Star over its actions in this case. Star claims that because all of the causes of action asserted against it arose by virtue of the agreements between Star and Warsec, Seckler is not a real party in interest for any of the claims.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "every action shall be prosecuted in the name of the real party in interest." In order to demonstrate that he is a real party in interest, Seckler must allege facts sufficient to reveal that he suffered an injury, that the injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit. *See Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Clearly, Seckler has satisfied that test. He has alleged that Star's conduct caused him to sell his home for less than its fair market value, and that he has suffered emotional and mental distress as a result. He personally relied on Star's representations regarding its intention to sell the station, and Star was aware of this. We conclude that Seckler has standing to pursue his pendant state law claims against Star.

---

[5]*Shukla* would at first seem to make the opposite conclusion, as the court there held that the PMPA did not apply to Shukla's constructive termination claim and preempted his fraud claim. However, the PMPA would have applied to the non-renewal of his franchise had it not been a trial franchise, which may be non-renewed without cause. *Shukla,* 115 F.3d at 852.

III.

In conclusion, we AFFIRM the district court's holding that Seckler cannot state a claim under the PMPA, we REVERSE its holding that the PMPA preempts Seckler's state law claims and REMAND for further proceedings, and we AFFIRM the court's decision that Warren Seckler has standing to sue Star on the state law claims.