Filed 11/26/13  Arbabian v. ConocoPhillips Co. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| NICK ARBABIAN, | C069308 |
| Plaintiff and Appellant, | (Super. Ct. No. 39200900232054CUCLSTK) |
| v. | |
| CONOCOPHILLIPS COMPANY et al., | |
| Defendants and Respondents. | |

In this state law tort and breach of contract action, plaintiff Nick Arbabian sought damages on the ground that two employees of defendant ConocoPhillips Co. had misled him into believing ConocoPhillips would not terminate his Union 76 service station franchise, as the company had previously told him it was going to do, if he (belatedly) complied with the company's new image requirements.  Arbabian commenced this action after ConocoPhillips terminated his franchise anyway in the midst of his efforts to comply with the new requirements.

ConocoPhillips demurred on the ground the action was preempted by the Petroleum Marketing Practices Act (15 U.S.C. § 2801 et seq.) (the Act), which governs the termination and nonrenewal of petroleum marketing franchises and which forbids the

1

states from adopting, enforcing, or continuing in effect any law with respect to the termination or nonrenewal of such a franchise that is inconsistent with the Act. (15 U.S.C. § 2806(a).) The trial court sustained the demurrer, and Arbabian declined to amend. The court thereafter awarded attorney fees to ConocoPhillips.

On Arbabian's appeal from the judgment of dismissal, we find no error in the trial court's determination that this action is preempted by the Act. In some way, each of Arbabian's seven causes of action is premised on the termination of his Union 76 franchise, and allowing Arbabian to recover damages on any of those causes of action would allow ConocoPhillips to be penalized for terminating Arbabian's franchise in a manner inconsistent with the Act. The preemption provision in the Act precludes this. Accordingly, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the first amended complaint:

In January 2004, Arbabian and ConocoPhillips entered into a franchise agreement for Arbabian to sell Union 76 branded gasoline at a service station in Lathrop. Among other things, the agreement required Arbabian, at his expense, to comply with certain "minimum image requirements" established by ConocoPhillips "as in effect from time to time."

At some point, ConocoPhillips decided to modify the image requirements for Union 76 stations. A dispute arose between Arbabian and ConocoPhillips over the timing of the installation of the improvements necessary to meet the new requirements and who was responsible for paying for those improvements. Eventually, ConocoPhillips agreed to pay Arbabian two cents more per gallon to compensate him for the cost of installing the improvements, but ConocoPhillips refused to reduce the agreement to writing.

In approximately April 2007, ConocoPhillips began sending Arbabian letters "allegedly terminating his rights to be a reseller on behalf of [ConocoPhillips] based upon

2

their dispute relating to the timing and compensation for the image requirements imposed by [ConocoPhillips] and the resultant delay in installation." Thereafter, in August 2007, two account representatives employed by ConocoPhillips, Greg Pellegrino and William Brasher, orally agreed with Arbabian that if he complied with the new image requirements, the termination letters "would not be effective" and the franchise agreement would not be terminated.

In reliance on that oral agreement, Arbabian committed to have the improvements installed by Sign Design, Inc., the local company that performed image makeovers for ConocoPhillips. In late October 2007, a building permit was issued for installation of all but one of the new signs. The remaining new sign was not included in the permit because it violated the local municipal code.) It took approximately six to eight weeks from the issuance of the permits to have the new signs delivered, and Pellegrino and Brasher either knew or should have known this. By December 15, 2007, half of the price for installing the new signs had been paid. Nevertheless, on December 21, ConocoPhillips terminated the franchise agreement with Arbabian.

Two years later, in December 2009, Arbabian commenced this action for damages against ConocoPhillips, Brasher, and Pellegrino. ConocoPhillips and Brasher demurred, and in response Arbabian filed an amended complaint alleging the facts set forth above. In his amended complaint, Arbabian purported to assert causes of action for breach of contract, promissory estoppel, waiver, negligent misrepresentation, fraud, failure to disclose, and "excuse by the doctrine of commercial frustration."

Again, ConocoPhillips and Brasher demurred,[1] asserting that all of Arbabian's causes of action were preempted by the Act because they were "predicated on the alleged

---

[1]     The parties later stipulated that the demurrer was as to Pellegrino also.

3

wrongful termination of [his] reseller agreement with" ConocoPhillips. The trial court agreed but gave Arbabian leave to amend his complaint in June 2010.

A year later, Arbabian notified the court that he did not intend to amend his complaint further. Accordingly, in August 2011, the court entered judgment against him. Arbabian timely appealed from the judgment in September 2011. Thereafter, ConocoPhillips moved for attorney fees under the franchise agreement. The trial court granted that motion and awarded ConocoPhillips over $64,000 in attorney fees and costs. The court entered an amended judgment including the fee award in December 2011. Arbabian did not file a notice of appeal from the order granting the fee motion or from the amended judgment.

## DISCUSSION

On appeal from the judgment of dismissal, Arbabian contends the trial court erred in concluding this state law damages action is preempted by the Act. We disagree.

"The [Act] has two main objectives. The first is to protect petroleum marketing franchisees against arbitrary or discriminatory terminations or nonrenewals of their service station franchises. [Citations.] The second is to provide ' "adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences." ' [Citations.]

"To accomplish these objectives, 'Congress enacted a set of uniform rules to govern the grounds, required notice, and procedures for termination or nonrenewal of petroleum marketing franchises.' [Citation.] To insure nationwide uniformity, Congress explicitly included a preemption provision in the [Act], which provides:

"To the extent that any provision [of the [Act]] applies to the termination . . . of any franchise, or to the nonrenewal . . . of any franchise relationship, no state . . . may adopt, enforce or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination . . . of any such franchise or to the nonrenewal . . . of any such franchise relationship unless

4

such provision of such law or regulation is the same as the applicable provision of [the [Act]]." (*Arbabian v. BP America* (N.D.Cal 1995) 898 F.Supp. 703, 707, quoting 15 U.S.C. § 2806(a).)

As one California court has explained, "The courts have perceived, and the language and legislative history of the [Act] support, a congressional intent that claims which, in the last analysis, are for assertedly improper termination of a petroleum franchise be brought only under the [Act] or local law which is 'the same as' the [Act]. Only in this way can some semblance of uniformity in the treatment of such claims be assured." (*Mobil Oil Corp. v. Superior Court* (1987) 189 Cal.App.3d 485, 489.)

A sampling of cases will help illustrate when a claim is, in the last analysis, for assertedly improper termination of a petroleum franchise. In *Mobil Oil Corp.*, Frank and Joseph Benevento brought an action against Mobil for breach of the implied covenant of good faith and fair dealing, fraud, and interference with prospective economic advantage arising out of their loss of a Mobil service station lease, which terminated when Mobil elected not to renew the underlying ground lease. (*Mobil Oil Corp. v. Superior Court*, *supra*, 189 Cal.App.3d at p. 486.) "Among other things [the Beneventos] alleged that a representative of Mobil had given them false assurances concerning the ground lease and that with respect to the ground lease Mobil had acted fraudulently, in bad faith, and with intent to disrupt the Beneventos' economic relationships with their established customers. The Beneventos sought relief including compensation for emotional distress and punitive damages." (*Id.* at p. 487.) On writ review from the denial of summary judgment in favor of Mobil, the appellate court held that the Act "preempt[s] common law rights and remedies" and, in particular, preempted the Beneventos' claims because "[t]ermination of the ground lease, for whatever purposes and with or without honest disclosure, was significant to the Beneventos only because it worked a termination of the franchise" and therefore "in essence each of their claims is for the termination of their franchise." (*Id.* at pp. 486, 489.)

5

In *Consumers Petroleum Co. v. Texaco, Inc.* (6th Cir. 1986) 804 F.2d 907, a Texaco franchisee refrained from pursuing distributorship opportunities with other petroleum suppliers based on the representation of a Texaco executive that Texaco would never withdraw from Michigan. (*Id.* at p. 909.) After Texaco ultimately did withdraw from Michigan, and as a result terminated the franchise, the franchisee brought claims against Texaco under the Act and state law. (*Consumers Petroleum*, at pp. 909-910.) In holding that the franchisee's state law claims of fraud and misrepresentation were preempted by the Act, the circuit court wrote as follows: "On its face, a claim for misrepresentation or fraud does not appear to relate to the nonrenewal or notice requirements of the Act. In our view, however, the claim as it arises in this case has the direct effect of seeking to impose a longer notice requirement upon Texaco than that required under the [Act]. No matter how the claim is characterized, [the franchisee] is really contending that [the Texaco executive] should have given it notice in response to its inquiry that Texaco planned to withdraw from the Michigan market and planned not to renew the five-year franchise agreement three years in the future. This is not a situation where the impact of state law has a tangential or speculative effect on the 180 day notice requirement. If we were to hold that the state law claims could proceed, the impact of the misrepresentation or fraud claims would produce a result in complete variance with what the notice provision of the Act requires. A franchisee is presumed to be aware of the notice requirements at the time it signs a franchise agreement. Congress has, therefore, placed a responsibility on the franchisee to be prepared for notice of an impending termination or nonrenewal that could come as late as 180 days before the agreement expires. Even assuming [the franchisee's] version of the Fisher-Feldman meeting to be true, Congress did not intend for franchisors to be compelled to reveal any contemplated or completed plans for termination or nonrenewal prior to the notification limits mandated under the [Act]. Furthermore, even if the claims were somehow actionable, they would be governed exclusively by the [Act], which provides remedies for disputes

6

relating to the termination or nonrenewal of franchises." (*Consumers Petroleum*, at p. 915.)

In *Shukla v. BP Exploration & Oil, Inc.* (11th Cir. 1997) 115 F.3d 849, the franchisor (BP) sold all of its service stations in the Jacksonville area, including the one leased by the plaintiff (Shukla), in the midst of his one-year trial lease period. (*Id.* at p. 851.) When the buyer (Petro) refused to renew the lease, Shukla sued BP, alleging that the sale of the stations constructively terminated his franchise agreement, in violation of the Act and that BP had fraudulently induced him to enter into the lease (franchise agreement). (*Shukla*, at p. 851.) In rejecting Shukla's argument that his fraud claim was "based not upon nonrenewal, but upon BP's failure to disclose the fact that it intended to sell [his] station and assign the [lease]," the circuit court wrote as follows: "The problem with Shukla's argument is that BP's alleged failure to disclose is material only because the new franchisor, Petro, refused to renew Shukla's franchise. . . . The damages Shukla allegedly suffered as a result of the fraud flowed directly from Petro's failure to renew his franchise. Moreover, the factual allegations supporting Shukla's fraud claim are nearly identical to the allegations supporting his . . . constructive termination claim [under the Act]. [Citations.] Thus, Shukla's fraud claim is intimately bound up with the nonrenewal of his franchise. The [Act] provides exclusive remedies for disputes relating to the nonrenewal of franchises and preempts state law claims based on nonrenewal, no matter how such claims are characterized." (*Shukla*, at pp. 855-856, fn. omitted.)

With the foregoing examples in mind, we find no error in the trial court's determination that the present action is preempted by the Act because each and every cause of action Arbabian alleged was inextricably bound up with, and based on, ConocoPhillips's termination of his franchise agreement and thus was, in the last analysis, for assertedly improper termination of a petroleum franchise.

Arbabian's first cause of action alleged the breach of an oral agreement not to terminate his franchise pursuant to the written notices of termination ConocoPhillips had

already sent to Arbabian.  Indeed, Arbabian specifically alleged that "[a]s a direct and proximate result of [the] breach [of the oral contract] Conoco[Phillips] *terminated the dealer relationship* and plaintiff has been damaged as will be shown according to proof." (Italics added.)  This is just another way of asserting the wrongful termination of his franchise agreement.  In effect, Arbabian alleged that ConocoPhillips was not entitled to rely on the termination notices it had issued to him.  The Act provides, however, that a franchisor may terminate a franchise if the notice requirements of the Act are met and if the termination is based on a ground described in the Act.  (15 U.S.C. § 2802(b)(1).)  An award of damages under state law for breach of an oral promise not to terminate would conflict with this provision.  At the very least, Arbabian has failed to show how a damage remedy under state law based on an alleged promise not to terminate his franchise would not be the same as a remedy available to him under the Act.  Accordingly, this cause of action is preempted.

Similar conclusions apply with respect to Arbabian's remaining causes of action against ConocoPhillips.  Arbabian's second cause of action, for promissory estoppel, alleged that ConocoPhillips "was estopped from terminating the dealer agreement."  Just like the cause of action for breach of oral contract, this cause of action seeks damages for the termination of the franchise and thus is, in effect, a cause of action for improper termination of a petroleum franchise.

To the extent Arbabian's third cause of action -- "waiver" -- states a cause of action at all, that cause of action is based on the assertion that ConocoPhillips "waived by [its] acts and deeds any right it might have otherwise have had to terminate the dealer agreement."  Again, this is nothing more than a different way of alleging a cause of action for improper termination of a petroleum franchise.

Arbabian's sixth cause of action, for failure to disclose, alleged that Pellegrino and Brasher "failed to disclose . . . that Conoco[Phillips] was going to terminate Arbabian whether or not he installed the image requirements as required by the corporation." As in *Shukla*, this alleged nondisclosure was material only because of its relationship to the termination of the franchise agreement. Thus, the nondisclosure cause of action was intimately bound up with the termination of Arbabian's franchise and was preempted by the Act.

As for Arbabian's seventh cause of action, there he alleged that because he could not complete the improvements to comply with the new image requirements because one of the signs violated the municipal code, "[b]y virtue of the doctrine of commercial frustration it was improper and a breach of contract for Conoco[Phillips] to terminate the agreement." Thus, again Arbabian sought damages for the allegedly wrongful termination of the franchise agreement, and again his cause of action was preempted by the Act.

Arbabian's fourth and fifth causes of action, for negligent and intentional misrepresentation as to Brasher and Pellegrino only, are subject to the same analysis and conclusion. In essence, Arbabian alleged that he was entitled to rely on their representations that ConocoPhillips would not terminate his franchise pursuant to the termination notices previously sent if he (belatedly) complied with the new image requirements. Just as with the alleged failure to disclose, these representations were material only because of their relationship to the termination of the franchise agreement.

Furthermore, it makes no difference that Arbabian asserted these causes of action only against the individual defendants and not against ConocoPhillips directly. A corporation can act only through its officers, agents, and employees. Given this fact, it would be anomalous to conclude that a cause of action against a franchisor corporation is preempted by the Act, but the very same cause of action is *not* preempted if asserted against the individual who acted for the corporation. As Arbabian acknowledges, "under

9

the doctrine of respondeat superior an employer is liable for the torts of the employee committed while acting within the scope of employment." Here, Arbabian's complaint alleged that Brasher and Pellegrino were "act[ing] within the course and scope of their agency in doing the acts hereinafter alleged." Thus, ConocoPhillips would be liable for any misrepresentations Brasher and/or Pellegrino made about ConocoPhillips's intent to follow through with the termination of Arbabian's franchise, and allowing Arbabian to recover against them based on such misrepresentations would allow him to do an end run around the preemption provision in the Act.

For all of the foregoing reasons, we conclude the trial court did not err in sustaining the demurrer on the ground of preemption.

In his opening brief, Arbabian also sought to challenge the postjudgment award of attorney fees on the ground that the award "was made premised on the idea that the claims arose out of contract which they did not." After ConocoPhillips pointed out that Arbabian failed to appeal from the order granting the attorney fees motion, Arbabian retreated in his reply brief, arguing only that "if this court reverses the [trial] court's decision on the merits, as a matter of law the attorney fee award must likewise be extinguished." At the same time, Arbabian conceded that "if this court affirms [the trial] court in judgment then [he] . . . would have no basis to argue against the attorney fee award."

Because we have determined the trial court did not err in sustaining the demurrer, the judgment must be affirmed, and thus by his own concession Arbabian has no basis for challenging the award of attorney fees and costs.

DISPOSITION

The judgment is affirmed.  ConocoPhillips shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


      ROBIE     , J.


We concur:


     HULL     , Acting P. J.


     MURRAY    , J.

11